1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MING CHING JIN,

               Plaintiff,

    v.

C. RODRIGUEZ, et al.,

               Defendants.

_____/

CASE NO. 1:04-CV-5894-REC-LJO-P

FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART

(Docs. 40 and 63)

I.    Findings and Recommendations Addressing Parties' Motions for Summary Judgment

    A.    Relevant Procedural History

        Plaintiff Ming Ching Jin ("plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's original complaint, filed June 28, 2004, against defendants Rodriguez, Aguirre, Quinn-Robicheaux,[1] and Vargas ("defendants") for retaliation.[2] On August 15, 2005, plaintiff filed a motion for summary judgment. (Docs. 40, 41.) Defendants filed an opposition and a cross-motion for summary judgment on

///

///

---

[1] Identified as Quinn-Robicheau in the complaint.

[2] On March 3, 2005, plaintiff's due process, equal protection, and Title 15 claims were dismissed from this action for failure to state any claims upon which relief may be granted, and plaintiff's mental and emotional distress claims were dismissed pursuant to 42 U.S.C. § 1997e(e). (Doc. 21.)

1

1   October 24, 2005.  (Docs. 63-68.)  Plaintiff filed an opposition to defendants' cross-motion on

2   December 30, 2005.[3]  (Docs. 88-90.)

3          B.      Summary Judgment Standard

4          Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

5   as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

6   Civ. P. 56(c).  Under summary judgment practice, the moving party

7               [A]lways bears the initial responsibility of informing the district court
                of the basis for its motion, and identifying those portions of "the
8               pleadings, depositions, answers to interrogatories, and admissions on
                file, together with the affidavits, if any," which it believes
9               demonstrate the absence of a genuine issue of material fact.

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish that

11  there exists no genuine issue of material fact and that the moving party is entitled to judgment as a

12  matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

13         "When the moving party does not have the burden of proof on the issue, he need show only

14  that the opponent cannot sustain his burden at trial."  Calderone v. United States, 799 F.2d 254, 259

15  (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining

16  Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  "But where the moving party has the burden -

17  the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be

18  sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

19  party."  Id.  Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there

20  is no triable issue as to the matters alleged in his complaint.  Id.  This requires plaintiff to establish

21  beyond controversy every essential element of his retaliation claims.  Fontenot v. Upjohn Co., 780

22  F.2d 1190, 1194 (5th Cir. 1986).  Plaintiff's evidence is judged by the same standard of proof

23  applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

24         As to defendants' motion for summary judgment, "where the nonmoving party will bear the

25  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

26  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

27

28         [3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    court in an order filed on February 8, 2005.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 18.)

                                                    2

1    Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Indeed, summary judgment should be entered,

2    after adequate time for discovery and upon motion, against a party who fails to make a showing

3    sufficient to establish the existence of an element essential to that party's case, and on which that

4    party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an

5    essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

6    In such a circumstance, summary judgment should be granted, "so long as whatever is before the

7    district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

8    56(c), is satisfied." Id. at 323.

9         If the moving party meets its initial responsibility, the burden then shifts to the opposing

10   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

11   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

12   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

13   required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

14   material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

15   U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e.,

16   a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

17   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

18   626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

19   jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d

20   1433, 1436 (9th Cir. 1987).

21        In the endeavor to establish the existence of a factual dispute, the opposing party need not

22   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

23   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

24   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

25   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

26   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

27   amendments).

28   ///

3

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.    Plaintiff's Motion for Summary Judgment[4]

1.    Summary of Allegations in Plaintiff's Complaint

In his complaint, plaintiff alleges that in 2003, while he was at CSP-Corcoran, defendants Aguirre and Rodriguez were ordered to file a disciplinary action against him in retaliation for the complaints he submitted to the Warden, Captain, and Ombudsman's Office a few days earlier. Plaintiff alleges that on March 1, 2003, defendants told him that two officers had found a twelve ounce jar of alcohol in his cell.  Plaintiff alleges that his request for a receipt was denied.  Plaintiff alleges that on March 11, 2003, he was served with a CDC-115 (Rules Violation Report, identified hereinafter as an RVR) in which defendant Aguirre, a Correctional Officer, falsely charged him with possession of alcohol.  Plaintiff alleges that many bags of alcohol were found in other cells, but he was the only one charged.  Plaintiff alleges that on March 18, 2003, after plaintiff's witness testified, defendant Rodriguez, a Correctional Lieutenant, forged the witness's testimony and found plaintiff guilty of manufacturing alcohol.  Plaintiff alleges that as defendant Aguirre was escorting plaintiff

---

[4] Both parties set forth evidentiary objections in their oppositions.  All objections were reviewed by the court and the evidence considered by the court was done so in accordance with the Federal Rules of Evidence.

4

1   from the hearing room, he told plaintiff he was just doing his job and had been ordered to teach

2   plaintiff a lesson not to file a complaint.

3          Plaintiff alleges that on July 5, 2003, after a transfer to Pleasant Valley State Prison (PVSP),

4   he submitted a family visitation package to defendant Vargas, who was his counselor.  Plaintiff

5   alleges that defendant Vargas said he had received a big package of memos consisting of about thirty

6   pages, which he had not read and did not need to read because no inmates in his building were

7   eligible to apply for visitation.  Plaintiff alleges that defendant Vargas said he would disapprove

8   family visits because he would be forced to study the memo and that plaintiff had better apply before

9   he moved out of his building.  Plaintiff alleges that when he told Vargas that there were no grounds

10  to disapprove his visitation application, Vargas told plaintiff not to smart talk him and that Vargas

11  had to teach plaintiff a lesson.  Plaintiff alleges that on July 9, 2003, defendant Vargas proposed and

12  defendant Quinn-Robicheaux, a Correctional Captain, approved two visitation restriction chronos

13  restricting plaintiff from contact visitation with his children and excluding him from family visitation

14  based on his conviction of child endangerment.

15         Plaintiff alleges that on October 22, 2003, he handed defendant Quinn-Robicheaux a three

16  page memo and requested she reconsider the visitation restriction.  Plaintiff alleges that defendant

17  spent less than thirty seconds reading the title of the appeal and made a phone call to a lieutenant,

18  telling him that she wanted to nail down the appeal and asking for assistance.  Plaintiff alleges

19  defendant wrote down a lot of notes while she was talking on the phone and looking at plaintiff's

20  c-file (central file), and told plaintiff that she only took away his contact visitation but was now

21  going to take away window visitation because of the complaints.  Plaintiff alleges that defendant

22  Quinn-Robicheaux failed to weigh evidence to determine whether the visits would be in the best

23  interest of the children, as required by the Director's rules and California Penal Code 5054.2.

24  Plaintiff alleges that defendants Vargas and Quinn-Robicheaux deprived him of visitation in

25  retaliation for the complaints he filed.

26

27

28

2.   Statement of Undisputed Facts[5]

1.   On February 7, 2003, plaintiff wrote to a warden and complained against the colleague of defendants Rodriguez and Aguirre.

2.   On February 12, 2003, plaintiff's lawyer wrote to a warden and complained against the colleague of defendants Rodriguez and Aguirre.

3.   On February 22, 2003, plaintiff wrote to a captain and complained against the colleague of defendants Rodriguez and Aguirre.

4.   On February 22, 2003, plaintiff wrote to an ombudswoman and complained against the colleague of defendants Rodriguez and Aguirre.

5.   On February 27, 2003, plaintiff wrote to a captain and complained against the colleague of defendants Rodriguez and Aguirre.

6.   On March 1, 2003, plaintiff wrote to a captain and complained against the colleague of defendants Rodriguez and Aguirre

7.   On March 2, 2003, plaintiff wrote to a warden concerning the complaint against the colleague of defendants Rodriguez and Aguirre.[6]

8.   On March 2, 2003, plaintiff wrote to an ombudswoman concerning the complaint against the colleague of defendants Rodriguez and Aguirre.

9.   On March 2, 2003, plaintiff wrote to an appeals coordinator concerning the complaint against the colleague of defendants Rodriguez and Aguirre.

10.   On March 2, 2003, plaintiff wrote to an inmate assignment coordinator and complained against the colleague of defendants Rodriguez and Aguirre.

---

[5] Plaintiff's complaint, motion, and opposition are verified and shall be treated as affidavits for purposes of the summary judgment rule where they are based on facts within plaintiff's personal knowledge of admissible evidence, and not merely on plaintiff's belief.  See Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

[6] With respect to facts 7, 8, and 9 (facts 9, 10, and 11 in plaintiff's statement of undisputed facts), plaintiff mis-characterized the written statements as complaints.  The written statements were inquiries regarding previously submitted complaints, not new complaints against defendants' colleagues.  The court corrected this mis-characterization for the factual statement set forth in this F&R.

11.  On March 1, 2003, inmate Everett witnessed two officers enter plaintiff's cell to conduct a wine sweep search.

12.  On March 1, 2003, inmate Everett witnessed two officers exit plaintiff's cell after they conducted a wine sweep search.

13.  On March 1, 2003, there were 100 cells in plaintiff's building.

14.  The alleged misconduct of plaintiff was never referred to the District Attorney for criminal investigation.

15.  On July 5, 2003, defendant Vargas was assigned as Correctional Counselor I for Building 5 at B yard for PVSP, which housed inmates whose classifications were either Close A or Close B.

16.  On July 5, 2003, plaintiff submitted a family visiting application to defendant Vargas for approval, because his custody was to be reduced to Medium A on July 9, 2003.

17.  On July 5, 2003, defendant Vargas told plaintiff that he received a memo dated June 11, 2003, containing about 30 pages regarding the restriction of family visiting.[7]

18.  On July 5, 2003, plaintiff told defendant Vargas that he was not a sex offender, so defendant Vargas could not deny his application for family visiting.

19.  On July 5, 2003, defendant Vargas warned plaintiff not to smart talk to him when plaintiff told him there was no criteria for denying his application for family visiting.

20.  On July 5, 2003, defendant Vargas told plaintiff that he would teach him a lesson when plaintiff told him there was no criteria for denying his application for family visiting.

21.  On July 9, 2003, defendant Vargas proposed two visiting restriction chronos to defendant Quinn-Robicheaux for approval, one of which was to exclude plaintiff from having family visiting with his immediate family due to his conviction for child endangerment in violation of California Penal Code section 273a and the other of which was to exclude plaintiff from having contact visits with minor children due to his conviction of child endangerment in violation of California Penal Code section 273a.

---

[7] The memo was erroneously identified by plaintiff in his statement of undisputed facts as dated November 6, 2003. (Doc. 41, P's Fact Statement, Fact 61; Attachment 4.)

22.   On October 22, 2003, defendant Quinn-Robicheaux wrote down a lot of notes on plaintiff's c-file when she was on the phone with visiting lieutenant, including the following: "Committee also elects to restrict Jin from visits with minors, non-contact or contact, due to his non-controlling case of [Penal Code] § 273(A)(1) [sic], cruelty to a child and kidnaping two victims at gunpoint with silencer for two days and also for torturing the victim for two days in front of the minor children. Committee would also like to note restriction from minor visiting was placed on July 9, 2003. Visiting restriction was also confirmed by Lt. D. Allen."

3.   Discussion

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

a.   Disciplinary Action

Plaintiff argues he is entitled to judgment as a matter of law on his claim that defendants Rodriguez and Aguirre disciplined him in retaliation for the written complaints he filed. While housed at CSP-Corcoran, plaintiff submitted a number of written complaints against prison staff members between February 7, 2003, and March 1, 2003. (Undisputed Facts 1-6.) Plaintiff contends that on March 1, 2003, defendant Rodriguez ordered a pruno sweep in order to provide defendant

///
///

Aguirre with the opportunity to fabricate evidence to support disciplinary charges against plaintiff, in retaliation for the complaints plaintiff filed.[8]  (Doc. 41, Motion, 23:8-11.)

The entry to and exit from plaintiff's cell by two officers conducting the pruno search was witnessed by inmate Everett.  (Undisputed Facts 11, 12; Motion, Everett Dec., Attachment 3, ¶4.) Inmate Everett attests that he saw the two officers leave plaintiff's cell with a trash bag containing some "anti" see-through jars,[9] a 12-ounce coffee jar, a 12-ounce jalapeno jar, and a 14-ounce ketchup bottle, and that after the two officers exited plaintiff's cell, defendant Rodriguez entered the cell and looked around for approximately five seconds.  (Everett Dec., Attachment 3, ¶4.)  Inmate Everett attests that defendant Aguirre did not search plaintiff's cell and was standing outside the cell when defendant Rodriguez entered the cell.  (Id., ¶7.)  Inmate Everett attests that out of 100 cells searched, 7 cells were found to contain wine, but no one was written up except for plaintiff.  (Id.)

Plaintiff contends that following the search of his cell, he was not provided with a receipt in compliance with regulations and argues that this was because no alcohol had been found in his cell. (Motion, 23:21-24; P's Fact Statement, Facts 13, 14.)  Plaintiff contends that defendant Aguirre told plaintiff that he could not provide a receipt because two other officers searched plaintiff's cell and found the alcohol.  (Id.)  Plaintiff contends that on March 11, 2003, he was served with an RVR charging him with possession of alcohol, but that defendant Rodriguez increased the charge to manufacturing alcohol during the hearing held on March 18, 2003.  (P's Fact Statement, Facts 37, 38.)  Plaintiff contends that the charge was increased from a D offence to a C offense without the requisite twenty-four hour notice, and that the increase made plaintiff ineligible for time credit restoration.  (P's Fact Statement, Facts 39-41; p. 26:2-14.)  Plaintiff further contends that because defendant Rodriguez ordered the pruno sweep and was present on the scene, defendant was not qualified under section 3320 to conduct the disciplinary hearing.  (P's Fact Statement, 44, 45; Cal.

---

[8] Plaintiff uses the term "wine" while defendants use the term "pruno."  For the sake of consistency, the court shall use the term "pruno," except when describing inmate Everett's statements.

[9] Plaintiff does not define "'anti' see-through jars," and the court is unfamiliar with the term.  However, plaintiff states in a parenthetical that the jars were without alcohol.  (P's Fact Statement, Doc. 41, Fact 20.)

Code Regs. tit 15, § 3320(h) (2006)[10].)  Additionally, the alleged misconduct of plaintiff was never referred to the District Attorney for criminal investigation. (Undisputed Fact 14.)  Plaintiff argues that these irregularities demonstrate defendants' retaliatory intent. (Id.)  Finally, plaintiff contends that as he was being escorted from the room following the disciplinary hearing, defendant Aguirre told plaintiff he was just doing his job and had been ordered to teach plaintiff a lesson not to file a complaint. (Doc. 1, Comp., p. 2.1.)

Defendants oppose plaintiff's motion on the ground that their conduct served a legitimate penological purpose.  Defendants submit evidence that on March 1, 2003, defendant Rodriguez ordered staff to conduct a search of all cells in housing units 1 through 5 and the common areas for inmate manufactured alcohol, known as "pruno." (Doc. 66, Aguirre Decl., ¶2.)  Ten to fifteen officers participated in the sweep, with at least two officers searching each cell. (Id., ¶3.)  At the time, plaintiff was the only inmate assigned to cell 150 in unit 3, Facility 3C. (Id., ¶5.)  While in plaintiff's cell, defendant Aguirre discovered two large plastic containers containing fermenting fruit pulp, which is a key ingredient in pruno, and a clear 12-ounce plastic container of a clear liquid with a strong odor of alcohol. (Id., ¶7.)  Defendant Aguirre prepared an RVR charging plaintiff with possession of alcohol, signed the report, and turned it in for further processing. (Id., ¶¶10-11; Ex. 2.)  Defendant Aguirre denies issuing the RVR to plaintiff for the purpose of retaliation or for any other improper purpose. (Id., ¶12.)

Defendants submit evidence that on March 11, 2003, the Correctional Lieutenant in charge of classifying RVRs changed the charge in plaintiff's RVR from possession of alcohol to manufacturing of alcohol, and that on March 11, 2003, after the charge was changed to manufacturing of alcohol, a copy of the RVR was given to plaintiff. (Doc. 66, Rodriguez Decl., ¶¶13- 14.) Defendants contend the change from possession to manufacturing of alcohol on plaintiff's

///

---

[10] The court takes judicial notice of section 3320, which provides, "Staff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rule violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief in the inmate's guilt or innocence shall not hear the charges or be present during the deliberations to determine guilt or innocence and disposition of the charges." Cal. Code Regs. tit 15, § 3320(h) (2006).

RVR did not constitute an increase in the charge, as both violations are class "C" offenses, and the permissible punishments for both violations are the same. (Id., ¶16.)

On March 18, 2003, defendant Rodriguez conducted a hearing regarding the RVR, in which he found plaintiff guilty of manufacturing alcohol. (Id., ¶17.) Defendant Rodriguez denies that under applicable regulations his initiation of the pruno sweep precluded him from hearing the RVR. (Id., ¶10.) Defendant contends that every inmate found to have pruno or other contraband, such as weapons or drugs, was written up. (Id., ¶11.) Defendant Rodriguez denies conducting plaintiff's RVR hearing or finding plaintiff guilty of manufacturing alcohol for the purpose of retaliation or for any other improper purpose. (Id., ¶24.)

Defendants further contend that even though the manufacturing or possession of alcohol in prison is a felony, it was not the custom or practice at CSP-Corcoran to refer an inmate's manufacturing or possession of pruno to the district attorney for criminal prosecution, and in accordance with the custom and practice at CSP-Corcoran, defendant Rodriguez did not refer plaintiff's case to the district attorney for criminal prosecution. (Id., ¶¶25, 26.)

To prevail on his motion for summary judgment, plaintiff must establish beyond controversy every essential element of his claim. Fontenot, 780 F.2d at 1194. Defendants have submitted evidence that defendant Aguirre found alcohol in plaintiff's cell and that plaintiff was issued a disciplinary violation for that reason, thus creating a dispute of fact over whether the issuance of the violation was in furtherance of a legitimate correctional purpose or not. The existence of this factual dispute is sufficient to defeat plaintiff's motion for summary judgment on his retaliation claim against defendants Aguirre and Rodriguez.

> b.   Visitation Privileges

Plaintiff contends that on July 5, 2003, defendant Vargas was assigned as Correctional Counselor I for Building 5 at B yard for PVSP, which housed inmates whose classifications were either Close A or Close B. (Undisputed Fact 15.) Plaintiff contends that he submitted a family visiting application to defendant Vargas for approval on July 5, 2003, because his custody level was

1  to be reduced to Medium A on July 9, 2003.[11]  (Undisputed Fact 16.)  Plaintiff contends that

2  defendant Vargas told plaintiff that Vargas received a memo dated June 11, 2003, containing about

3  30 pages regarding the restriction of family visiting.  (Undisputed Fact 17.)  Plaintiff contends

4  defendant Vargas told plaintiff he had not studied and did not need to study the memo because no

5  inmates in his building were eligible for family visits due to their custody status (of Close A or Close

6  B). (Doc. 41, P's Fact Statement, Fact 62.) Plaintiff contends that defendant Vargas wanted plaintiff

7  to apply for family visitation after July 9, 2003, at which time plaintiff would already have moved

8  out of the building, and told plaintiff that he would disapprove plaintiff's application because he

9  would be forced to study the memo. (Id., ¶¶63- 64.)  Plaintiff contends he told defendant Vargas that

10  Vargas could not deny his application for family visiting because plaintiff was not a sex offender.

11  (Undisputed Fact 18.)  Plaintiff contends that defendant Vargas warned plaintiff not to smart talk to

12  him when plaintiff told him there was no criteria for denying his application for family visiting, and

13  that defendant Vargas told plaintiff that he would teach him a lesson when plaintiff told him there

14  was no criteria for denying his application for family visiting. (Undisputed Facts 19, 20.)

15      Plaintiff contends that on July 9, 2003, defendant Vargas proposed two visiting restriction

16  chronos to defendant Quinn-Robicheaux for approval.  (Undisputed Fact 21.)  One chrono was to

17  exclude plaintiff from having family visiting with his immediate family due to his conviction for

18  child endangerment in violation of California Penal Code section 273a and the other chrono was to

19  exclude plaintiff from having contact visits with minor children due to his conviction of child

20  endangerment in violation of California Penal Code section 273a.  (Id.)

21      Plaintiff argues that section 3173.1 of the California Code of Regulations does not preclude

22  inmates convicted of child endangerment in violation of California Penal Code section 273a from

23  having contact visits, and contends that pursuant to the memo dated June 11, 2003, defendants were

24  required to consider evidence before excluding him from family visitation and that each institution

25  had discretion to make decision on a case by case basis. (P's Fact Statement, Facts 73-78.) Plaintiff

26  ///

27  _____

28      [11] The court takes judicial notice that family visits are defined as extended overnight visits.  Cal. Code Regs. tit 15, § 3177 (2006).

1   argues that defendants used the vaguely worded memorandum to retaliate against him by prohibiting

2   him from visiting with his minor children. (Id., 85, 86.)

3       Plaintiff contends that on October 22, 2003, he handed defendant Quinn-Robicheaux a three

4   page memo requesting removal of the visiting restriction. (Id., 87.) Plaintiff contends that after

5   scanning the title of the memo, defendant Quinn-Robicheaux telephoned the visiting lieutenant. (Id.,

6   89, 91.) Defendant Quinn-Robicheaux wrote down a lot of notes on plaintiff's c-file when she was

7   on the phone with visiting lieutenant, including the following: "Committee also elects to restrict Jin

8   from visits with minors, non-contact or contact, due to his non-controlling case of [Penal Code] §

9   273(A)(1) [sic], cruelty to a child and kidnaping two victims at gunpoint with silencer for two days

10  and also for torturing the victim for two days in front of the minor children. Committee would also

11  like to note restriction from minor visiting was placed on July 9, 2003. Visiting restriction was also

12  confirmed by Lt. D. Allen." (Undisputed Fact 22.) Plaintiff contends that defendant Quinn-

13  Robicheaux demanded that he withdraw his appeal regarding visitation and when he refused, she

14  denied him window (non-contact) visitation in retaliation. (P's Fact Statement, Facts 100-102.)

15      In their opposition, defendants contend that at the time relevant to this action, defendants

16  Vargas and Quinn-Robicheaux were employed at PVSP in the positions of Correctional Counselor

17  I and Facility Captain, respectively. (Doc. 66, Vargas Dec., ¶1; Quinn-Robicheaux Dec., ¶1.) One

18  of defendant Vargas's responsibilities at PVSP was to administer the inmates' visiting privileges in

19  accordance with the limitations and restrictions imposed by applicable regulations, and one of

20  defendant Quinn-Robicheaux's responsibilities was to chair Unit Classification Committee (UCC)

21  hearings for program review of inmates and other matters concerning the work group status and

22  privileges of inmates. (Vargas Dec., ¶2; Quinn-Robicheaux Dec., ¶2.)

23      Defendants contend that on or around early July 2003, defendant Vargas reviewed plaintiff's

24  central file to determine whether he was subject to the limitations imposed by prison regulations and

25  policies regarding visits with minor children and family. (Vargas Dec., ¶3.) After reviewing

26  plaintiff's central file, defendant Vargas determined that, pursuant to California Code of Regulations,

27  title 15, section 3173.1, plaintiff should be restricted from contact visits with minor children, and he

28  documented this assessment in a CDC 128B chrono, dated July 9, 2003. (Vargas Dec., ¶4; Ex. 3.)

1    Defendant Vargas further determined that, pursuant to California Code of Regulations, title 15,

2    section 3177, plaintiff should be excluded from family visits, and he documented this determination

3    in another CDC 128B chrono, dated July 9, 2003.[12]  (Vargas Dec., ¶5; Ex. 4.)

4          The documents in plaintiff's central file which were reviewed by Vargas included plaintiff's

5    abstract of judgment and plaintiff's probation report. (Vargas Dec., ¶¶6-7; Ex. 1, 7.)  The abstract

6    of judgment included showed that plaintiff had been convicted of two counts of child endangerment.

7    (Ds' Ex. 1.)  The probation report indicated that plaintiff committed violent crimes in the presence

8    of his children – including four-year-old twin girls, and had placed his children in danger by keeping

9    loaded weapons and high explosives in his house.  (Ds' Ex. 7.)

10         On July 9, 2003, defendant Vargas's determinations that plaintiff should be excluded from

11   family visits and that plaintiff was not eligible for contact visits with minor children were reviewed

12   by the UCC.  (Vargas Dec., ¶10; Quinn-Robicheaux Dec., ¶¶4-8.)  Defendants contend the UCC

13   elected to exclude plaintiff from family visits, and to restrict plaintiff from visiting with minor

14   children, and it issued a CDC 128G chrono documenting its decision.  (Vargas Dec., ¶11; Ex. 5.)

15         On October 22, 2003, the UCC convened for a program review of plaintiff and elected to

16   continue the restrictions on family visits and visits with minors.  (Vargas Dec., ¶12; Quinn-

17   Robicheaux Dec., ¶¶9-12; Ex. 6.)  Defendant Quinn-Robicheaux denies she urged or suggested that

18   plaintiff not pursue any appeal challenging the UCC's decisions or action, or that she did anything

19   to interfere with plaintiff's appeal rights.  (Quinn-Robicheaux Dec., ¶16.)  Defendant Quinn-

20   Robicheaux contends that her decisions concerning plaintiff were made in the discharge of her duties

21   as chairperson of the UCC, and no decision she made concerning plaintiff was for the purpose of

22   retaliation or for any other improper purpose.  (Quinn-Robicheaux Dec., ¶17.)

23         The court finds that plaintiff is not entitled to judgment as a matter of law on his retaliation

24   claims against defendants Vargas and Quinn-Robicheaux.  Defendants have set forth evidence that

25   pursuant to section 3177(b)(1) of the California Code of Regulations, plaintiff was precluded from

26

27         [12] The court takes judicial notice of sections 3174 and 3177 of the California Code of Regulations, title 15.
     Section 3174 governs standards of dress for inmate visitors.  Section 3177 governs family visiting and specifically
28   precludes inmates convicted of Penal Code section 273a from having family visits.  Defendants cite to 3174 rather
     than 3177.  The citation error was corrected by the court for this F&R.

family visitation due to his conviction for child endangerment.  Section 3177(b)(1) provides that family visits shall not be permitted for inmates convicted of violent offenses involving minors, including Penal Code section 273a (child endangerment).  This restriction against family visitation is mandatory under the regulation.  Defendants also set forth evidence that on July 9, 2003, plaintiff was restricted from contact visitation with his children pursuant to section 3173.1(c) of the California Code of Regulations, which limits visitation for inmates convicted of Penal Code section 273a to non-contact status.  The regulation make non-contact status mandatory.  Finally, defendants set forth evidence that on October 22, 2003, the UCC elected to restrict plaintiff from any visits with minor, contact or non-contact, due to plaintiff's conviction for child endangerment and information obtained from the probation officer's report, specifically cruelty to a child, kidnap of two victims at gunpoint with a silencer, and torture of the victim for two days in front of minor children.  Based on the submission of this evidence, plaintiff has not established beyond controversy that defendants impermissibly restricted his visitation due to his exercise of protected conduct and "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.  Accordingly, plaintiff's motion for summary adjudication on these claims must be denied.

        D.    Defendants' Cross-Motion for Summary Judgment

            1.    Statement of Undisputed Facts

1.      On May 6, 1998, plaintiff Ming Ching Jin was convicted of two counts of kidnaping, one count of conspiracy to manufacture counterfeit marks, one count of possession for sale of counterfeit marks, one count of possession of destructive or explosive devices, one count of possession of a silencer, two counts of money laundering, one count of conspiracy to launder money, and two counts of child endangerment.

2.      On March 1, 2003, defendant Rodriguez ordered staff to conduct a search of all cells in housing units 1 through 5, and the common areas, for inmate manufactured alcohol (also known as "pruno").

3.      Ten to fifteen officers participated in the pruno sweep.

4.      At the time, plaintiff was the only inmate assigned to cell 150 in unit 3, Facility 3C.

///

5.     Defendant Aguirre prepared an RVR charging plaintiff with possession of alcohol, signed the report, and turned it in for further processing.

6.     The Correctional Lieutenant in charge of classifying RVRs changed the charge in plaintiff's RVR from possession of alcohol to manufacturing of alcohol.

7.     On March 18, 2003, defendant Rodriguez conducted a hearing regarding the RVR, in which he found plaintiff guilty of manufacturing alcohol.

8.     At the time relevant to this action, defendants Vargas and Quinn-Robicheaux were employed at PVSP in the positions of Correctional Counselor I and Facility Captain, respectively.

9.     One of defendant Vargas's responsibilities at PVSP was to administer the inmates' visiting privileges in accordance with the limitations and restrictions imposed by applicable regulations.

10.    One of defendant Quinn-Robicheaux's responsibilities was to chair UCC hearings for program review of inmates and other matters concerning the work group status and privileges of inmates.

11.    In or around early July 2003, defendant Vargas reviewed plaintiff's central file to determine whether he was subject to the limitations imposed by prison regulations and policies regarding visits with minor children and family.

12.    After reviewing plaintiff's central file, defendant Vargas determined that, pursuant to California Code of Regulations, title 15, section 3173.1, plaintiff should be restricted from contact visits with minor children, and he documented this assessment in a CDC 128B chrono, dated July 9, 2003.

13.    Defendant Vargas further determined that, pursuant to California Code of Regulations, title 15, section 3177, plaintiff should be excluded from family visits, and he documented this determination in another CDC 128B chrono, dated July 9, 2003.

14.    The documents in plaintiff's central file which were reviewed by defendant Vargas included plaintiff's abstract of judgment and plaintiff's probation report.

15.    The abstract of judgment included showed that plaintiff had been convicted of two counts of child endangerment.

16.   The probation report indicated that plaintiff committed violent crimes in the presence of his children – including four-year-old twin girls, and had placed his children in danger by keeping loaded weapons and high explosives in his house.

17.   On July 9, 2003, defendant Vargas's determinations that plaintiff should be excluded from family visits, and that he was not eligible for contact visits with minor children, were reviewed by the UCC.

18.   The UCC elected to exclude plaintiff from family visits, and to restrict plaintiff from visiting with minor children, and it issued a CDC 128G chrono documenting its decision.

19.   On October 22, 2003, the UCC convened for a program review of inmate plaintiff and elected to continue the restrictions on family visits and visits with minors.

        2.   <u>Discussion</u>

          a.   <u>Disciplinary Action</u>

Defendants argue that they are entitled to judgment as a matter of law because their actions served a legitimate penological purpose. Defendants' position is that a pruno sweep was conducted on March 1, 2003, and plaintiff's cell was searched during the sweep. (Undisputed Fact 1; Aguirre Dec., ¶4-7.) Defendants contend that plaintiff was the sole occupant of the cell at that time and that defendant Aguirre found two containers of fermenting fruit pulp and a container of a clear liquid which smelled strongly of alcohol. (Aguirre Dec., ¶7.) As a result of this find, defendant Aguirre issued plaintiff a disciplinary violation for possession of alcohol. (<u>Id</u>., ¶¶9-10.) Defendants contend that on March 11, 2003, the Correctional Lieutenant in charge of classifying RVRs changed the charge from possession of alcohol to manufacture of alcohol, and that on March 11, 2003, after the charge was changed, plaintiff was given a copy of the RVR. (Rodriguez Dec., ¶¶13-14.)

On March 18, 2003, the disciplinary charge was heard by defendant Rodriguez. (Undisputed Fact 7.) Defendant contends that he found plaintiff guilty based on defendant Aguirre's report and other evidence. (Rodriguez Dec., ¶22.)

Plaintiff argues that defendants' actions did not serve any legitimate penological purpose, because there was no alcohol in his cell and defendants fabricated the charges to retaliate against him. Plaintiff contends that prior to the pruno sweep, he filed numerous complaints against W.

Hense, who worked with defendants Aguirre and Rodriguez for at least six months prior to the issuance of the disciplinary violation. (Doc. 89, Jin Dec., ¶¶31, 32.) Plaintiff contends that there was no alcohol in his cell, that defendant Aguirre did not search plaintiff's cell as Aguirre claims, and that the two officers who conducted the search exited with some anti see-through jars, a 12-ounce coffee jar, 12-ounce jalapeno jar, and 14-ounce ketchup bottle. (Everett Dec., ¶¶4, 7; Jin Dec., ¶¶5, 46.) Plaintiff contends that pursuant to section 3320(h) of the California Code of Regulations, defendant Rodriguez was precluded from hearing the disciplinary charge since he ordered the sweep, was on the scene of the sweep, and entered plaintiff's cells after the two officers conducted their search. (Everett Dec., ¶¶4, 7; Jin Dec., ¶56.) Further, plaintiff contends that after the hearing, defendant Aguirre told plaintiff he was just doing his job and had been ordered to teach plaintiff a lesson not to file a complaint. (Doc. 1, Comp., p. 2.1.)

Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning whether the issuance of the RVR resulted from the confiscation of alcohol from his cell or whether there was no alcohol in his cell and he was set up in retaliation for the written complaints he filed against staff members. Specifically, plaintiff submitted evidence that he filed complaints against staff, that there was no alcohol in his cell, that defendant Aguirre did not search plaintiff's as he claimed, that defendant Aguirre did not find and remove two large plastic containers of fermenting fruit pulp and a clear container of alcohol from plaintiff's cell as he claimed, and that immediately following the disciplinary hearing, defendant Aguirre made a statement that he was just doing his job and had been ordered to teach plaintiff a lesson. It is undisputed that defendant Rodriguez directed defendant Aguirre to issue plaintiff an RVR and plaintiff submitted evidence that defendant Rodriguez, who ordered the pruno sweep, was present during the sweep and entered plaintiff's cell after the searching officers exited the cell, and that pursuant to section 3320(h), defendant Rodriguez was ineligible to hearing the charges or be present during deliberations because of this involvement. Plaintiff also submitted evidence that officers found wine in 7 of the 100 cells searched, but only plaintiff was written up for it.

As previously set forth, the court is mindful that it must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

18

conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482).  In this instance, however, there exists a factual dispute between the parties over whether the proffered reason for the issuance of the RVR - the discovery of alcohol in plaintiff's cell - occurred or if it was fabricated in order to take retaliatory disciplinary action against plaintiff.  Because the evidence set forth by plaintiff is sufficient to create a triable issue of fact with respect to whether or not plaintiff was disciplined in retaliation for filing complaints against staff, the court shall recommend that defendants' motion for summary adjudication on plaintiff's retaliation claim against defendants Aguirre and Rodriguez be denied.

b.    Visitation Privileges

Plaintiff was convicted in 1998 of, among other crimes, two counts of child endangerment, in violation of Penal Code section 273a.  (Undisputed Fact 1; Ds' Ex. 1.)  Family visits, which are defined as extended overnight visits, are not permitted for inmates convicted of violating section 273a.  Cal. Code Regs. tit 15, § 3177(b)(1) (2006).  Further, for inmates convicted of violating section 273a, visits with minors are limited to non-contact status. Cal. Code Regs. tit 15, § 3173.1(c) (2006).

Defendant Vargas reviewed plaintiff's file and determined that pursuant to these regulations, plaintiff was precluded from family visits and from contact visits with minors.  (Undisputed Facts 11-15.)  Defendant Vargas's decision was documented on two chronos dated July 9, 2003, and reviewed by the UCC, of which defendant Quinn-Robicheaux was a member.  (Undisputed Fact 10, 17.)  On July 9, 2003, the UCC acted to exclude plaintiff from family visits and contact visits with minors, but allow plaintiff visits with children behind glass.  (Ds' Exhibit 5.)

Plaintiff bears the burden of demonstrating "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.  Assuming arguendo that plaintiff was engaged in protected conduct, although plaintiff has submitted evidence that defendant Vargas told plaintiff he was going to teach plaintiff a lesson for smart talking him, in light of the existence of regulations mandating the exclusion of plaintiff from the very types of visits he was excluded from on July 9, 2003, plaintiff has not and indeed cannot meet his burden of demonstrating that the visitation restrictions at issue were not motivated by any legitimate correctional purposes.

19

1    Defendants Vargas and Quinn-Robicheaux are therefore entitled to judgment as a matter of law on

2    plaintiff's retaliation claim against them based on the visitation restrictions imposed on July 9, 2003.

3          Turning to the restrictions of October 22, 2003, the UCC, of which defendant Quinn-

4    Robicheaux was the chairperson, elected to restrict plaintiff from all visits with minors, contact or

5    non-contact. (Ds' Exhibit 6.) Defendants contend that on July 9, 2003, the UCC elected to exclude

6    plaintiff from visiting with minor children and that its decision on October 22, 2003, was merely a

7    continuation of the restriction imposed on July 9, 2003. (Vargas Dec., ¶12; Quinn-Robicheaux Dec.,

8    ¶12; Ds' Ex. 6.) Further, defendants argue that they had discretion pursuant to section 3173.1 to

9    prohibit plaintiff from all visits with minors. Defendants contend that they considered plaintiff's

10   abstract of judgment and probation officer's report and based on the probation officer's report,

11   elected to exercise their discretion to prohibit plaintiff from contact and non-contact visitation with

12   his minor children. (Vargas Dec., ¶¶6-9; Quinn-Robicheaux Dec., ¶¶5-8.)

13         However, the evidence submitted by defendants relating to the visitation restriction of July

14   9, 2003, does not support defendants' contention that the restriction of October 22, 2003, was merely

15   a continuation of the prior restriction. The July 9 chrono authored by defendant Vargas states

16   "RESTRICTED FROM VISITS WITH MINOR CHILDREN" and handwritten next to that

17   statement are the words "behind glass only." (Ds' Ex. 3.) Further, defendant Vargas attests that on

18   July 9, 2003, he determined plaintiff should be restricted from *contact* visits with minor children.

19   (Vargas Dec., ¶¶4, 10.) The UCC decision of July 9, 2003, states that plaintiff is to have no family

20   visiting, no contact visits with minors, and visits with children behind glass only. (Ds' Ex. 5.) The

21   UCC decision of October 22, 2003, states that the committee elects to restrict plaintiff from visits

22   with minors, non-contact or contact, due to plaintiff's 273a case, cruelty to a child, kidnap of two

23   victims, and torture of two victims in front of minor children. (Ds' Ex. 6.) The decision also notes

24   that the restriction from minor visiting was placed on July 9, 2003. (Id.) However, the decision of

25   July 9, 2003, contains no restriction against *all* visitation with minors.

26         Further, defendants contend that section 3173.1 gives them discretion to preclude plaintiff

27   from *all* visitation with minors and represent that section 3173.1 states, "'Inmates may be prohibited

28   from having contact or non-contact visits [with minors] where substantial evidence (e.g., . . .

20

probation officer reports . . .) of misconduct described in section 3177(b)(1) exists, with or without criminal conviction.' Cal. Code Regs. tit. 15 § 3173.1." (Ds' Memo., Doc. 64, 8:11-14.)  The court has reviewed section 3173.1 in its entirety and can find no section in the regulation that states what defendants assert it states, and defendants have advanced no argument that the regulation's language was different in 2003, when the incident occurred.

Section 3173.1 precludes plaintiff from *contact* visitation with all minors, a restriction applied to plaintiff on July 9, 2003.  Cal. Code Regs. tit 15, § 3173(c),(d) (2006).  Section 3173.1 further provides that an inmate's visitation with minors may be restricted to non-contact if a classification committee determines that the inmate will pose a threat of harm to the minor visitors in contact visitation.  Cal. Code Regs. tit 15, § 3173(f) (2006).  However, since by virtue of plaintiff's conviction for violation of 273a plaintiff is already precluded from contact visitation with all minors under subsections c and d, application of subsection f is unnecessary.  With the exception of subsection a, which does not apply to plaintiff, the regulation does not contain any express or implied provisions providing for the suspension of *all* visitation with minors, non-contact and contact.

Additionally, plaintiff submits evidence that on October 22, 2003, defendant Quinn-Robixcheaux suggested to him that he withdraw his appeal challenging the UCC's decision and when he refused, she told him that last time she only took away his contact visits but now she was going to take away his window visits with his children.  (Doc. 89, Jin Dec., ¶28.)  Further, plaintiff submits evidence that after he refused to withdraw his appeal, the restriction from all visitation with minors was imposed.  (Id., ¶27.)

Plaintiff has a protected right to file prison grievances.  Bruce, 351 F.3d at 1288.  The regulation cited to by defendants for the proposition that they had discretion to restrict plaintiff from all visitation with minors based on his commitment offense and probation report does not contain any provisions applicable to plaintiff supporting that proposition.  In the absence of evidence from defendant that, in restricting plaintiff from *all* visitation with minors, she was exercising her discretion under one or more applicable prison rules or regulations, plaintiff's submission of evidence that this new restriction was imposed on October 22, 2003, after he refused to withdraw

his appeal is sufficient to give rise to a triable issue fact whether defendant Quinn-Robicheaux's actions served a legitimate penological purpose or whether she acted to retaliate against plaintiff for filing a grievance. Accordingly, the court shall recommend that defendant Quinn-Robicheaux's motion for summary adjudication on plaintiff's retaliation claim stemming from the October 22, 2003, visitation restriction be denied.

### 3.   Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity. Because the court finds that defendant Vargas is entitled to judgment as a matter of law and defendant Quinn-Robicheaux is entitled to judgment as a matter of law on the retaliation claim stemming from the July 9, 2003, visitation restriction, the court addresses only the remaining claims against defendants Aguirre, Rodriguez, and Quinn-Robicheaux.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

///

22

Plaintiff contends in both his complaint and opposition that defendants retaliated against him for filing written complaints and that no legitimate penological purposes were served by their actions. As set forth in the preceding sections, plaintiff has tendered evidence that supports his contentions. Although plaintiff bears the burden on retaliation claims of demonstrating that defendants' actions did not serve any legitimate penological purposes, that burden has been met. With respect to the pruno sweep, a dispute exists between the parties as to whether alcohol was found in plaintiff's cell, leading to the justifiable issuance of the RVR, or whether the alcohol find was fabricated to retaliate against plaintiff. With respect to the October 22, 2003, visitation restriction, the evidence submitted by defendants in support of the proposition that defendant Quinn-Robicheaux properly exercised discretion granted to her when she precluded plaintiff from all visitation with minors does not support that proposition, and plaintiff submitted evidence that defendant Quinn-Robicheaux further restricted his visitation because he would not withdraw his appeal. Accordingly, viewing the allegations in the light most favorable to plaintiff, the allegations are sufficient to show that defendants' conduct violated plaintiff's right to be free from retaliation. The first prong of the qualified immunity inquiry set forth in <u>Saucier</u> has therefore been met. <u>Saucier</u>, 533 U.S. at 201.

Turning to the second prong, the court must determine whether the right was clearly established. <u>Id</u>. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier</u>, 533 U.S. at 202 (citation omitted).

Defendants concede that it was clearly established at the time that retaliation against an inmate's right to petition the government could support a claim for violation of the inmate's constitutional rights. <u>See</u> e.g., <u>Hines v. Gomez</u>, 108 F.3d 265, 267(9th Cir. 1997) (guards found guilty of charging inmate with a false rules violation and finding him guilty in retaliation for inmate's prior use of the grievance system); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995)

23

(inmate alleged that he was transferred to a different prison and double-celled in retaliation for exercising his First Amendment rights); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate alleged that officers labeled him a snitch for petitioning prison and government officials for redress and that, because of this labeling, the inmate was approached by other inmates and threatened with harm); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (inmate alleged that he was reassigned out of a vocational class and transferred to a different prison because of his activities as a jailhouse lawyer). Given that the law was clearly established, the inquiry turns to whether it would be clear to a reasonable officer that his conduct was unlawful in the circumstance confronted by the defendant. Id. at 1051. As previously stated, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez, 323 F.3d at 1184.

Defendants argue that a reasonable officer would have thought it was lawful to act as they did because their actions served legitimate penological purposes, and that plaintiff has not established that their actions did not serve such purposes. The court rejects this argument.

If defendants Aguirre and Rodriguez discovered alcohol in plaintiff's cell or believed alcohol had been discovered in plaintiff's cell, as reasonable officers they would have believed that disciplining plaintiff was lawful. However, whether or not any alcohol was found in plaintiff's cell is in dispute. Viewing the evidence in the light most favorable to plaintiff, an issue of fact exists concerning whether alcohol was found in plaintiff's cell and he was justifiably disciplined for it or whether no alcohol was found and defendants Aguirre and Rodriguez fabricated the disciplinary violation to retaliate against plaintiff. Further, as set forth in the preceding sections, defendants' submission of evidence that plaintiff's visitation with minors was suspended on October 22, 2003, in furtherance of a legitimate penological purpose falls short of establishing that proposition. Taken together with plaintiff's evidence that defendant Quinn-Robicheaux acted to suspend all of plaintiff's visitation privileges with his children because he filed a grievance and refused to withdraw it, there exists an issue of fact concerning whether the increased visitation restriction served a penological purpose or whether it was imposed to retaliate against plaintiff.

///

Viewing the evidence in the light most favorable to plaintiff, the contours of plaintiff's right to be free from adverse action against him taken in retaliation for filing written complaints against staff were sufficiently clear that a reasonable officer would understand that his or her actions were unlawful in the situation confronted. <u>Saucier</u>, 533 U.S. at 202. Accordingly, the court finds that defendants Aguirre, Rodriguez, and Quinn-Robicheaux are not entitled to qualified immunity on plaintiff's remaining claims against them.

E.    <u>Conclusion</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment, filed August 15, 2005, be DENIED in its entirety; and

2.    Defendants' cross-motion for summary judgment, filed October 24, 2005, be GRANTED IN PART AND DENIED IN PART as follows:

a.    Defendants' motion for summary adjudication on plaintiff's retaliation claim against defendants Aguirre and Rodriguez be DENIED;

b.    Defendants' motion for summary adjudication on plaintiff's retaliation claim against defendants Vargas and Quinn-Robicheaux based on the July 9, 2003, visitation restrictions be GRANTED;

c.    Defendants' motion for summary adjudication on plaintiff's retaliation claim against defendant Quinn-Robicheaux based on the October 22, 2003, visitation restrictions be DENIED and

c.    Defendants' motion for summary judgment on plaintiff's remaining retaliation claims against defendants Aguirre, Rodriguez, and Quinn-Robicheaux based on qualified immunity be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

1   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

2   1153 (9th Cir. 1991).

3

4   IT IS SO ORDERED.

    **Dated:    January 25, 2006**              **/s/ Lawrence J. O'Neill**
5   b9ed48                               UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28